**UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | **Criminal No.   18-10004-IT** |
| **KENDRICK TATE** | ) | |
| | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

## INTRODUCTION

Now comes the Defendant, Kendrick Tate, and submits his Sentencing Memorandum. He respectfully requests that the Court sentence him to the agreed-upon disposition, that of 180 months to be served concurrently with his related state prison sentence, and to receive credit for the 21 months he has spent in state custody, for a total of 159 months. Such a sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v.Rodriguez, 527 F.3d 221 (1st Cir. 2008).

## PERSONAL HISTORY

Kendrick Tate's life has been marked by instability. He is the eldest of four children born to Deborah Tate, who was then just eighteen years old. His father, Kendrick Clark, has been largely absent from his life since birth, having met Kendrick Tate for the

1



first time when he was approximately ten years old. His father made a few attempts to connect through the years, which his mother perceives as occurring at his convenience only. His mother had her second child shortly after she graduated high school. She subsequently had two other children. Kendrick formed bonds with the fathers of her other children, though those relationships were short-lived due to deportation orders.

At the time Kendrick was born in 1992, his Deborah Tate was in high school and lived with her mother, Thomasine, in Brighton. Deborah moved with Kendrick into a homeless shelter and then into an apartment in Roxbury. She moved her family into public housing in Chelsea once an apartment became available. She has a strong work ethic and is a licensed home health aid, a field in which she was employed for approximately ten years. A few years ago, she returned to school at the New England Center for Arts and Technology to study culinary arts, and worked for a time as a cook at Dot 2 Dot Cafe in Dorchester. Her two middle children are both employed as security officers and have no history of criminal activity.



Aside from Kendrick's mother, Thomasine was the



most significant adult figure in Kendrick's life. Maternal uncles and aunts also tried to help, though his mother sometimes relied on childcare.

As a young child, Kendrick was exposed to abuse at the hands of one of his caretakers and witnessed violence on the streets. He was diagnosed with attention deficit disorder, and later, bipolar disorder. In middle school, he had difficulty emotionally and

 academically, and was the victim of bullying. Faced with poor school attendance, his mother engaged the help of social services counselors and her religious community. He was also hospitalized on several occasions including at the Italian Home for Children and Carney Hospital. He eventually attended the Compass School in Dorchester, which offered smaller

classrooms and greater resources for those with learning and emotional disabilities. He describes himself as having a hard time opening up to people, and has felt suicidal in the past. He acknowledges regular use of marijuana as a way to self-medicate in the face of his symptoms. Since his incarceration on his related state sentence, he has received some counseling and was engaged in therapy through Spectrum Services, though he became discouraged by inconsistencies in the services provided. He is currently studying for his GED examination, and hopes to obtain his CDL license.

<u>SUMMARY OF THE FACTS</u>

Through his plea, Kendrick Tate accepts responsibility for his role in the offenses charged in this case. Specifically, that he was engaged in the sale of seven grams of crack

cocaine on April 27, 2017, and the sale of a firearm on April 28, 2017, to a cooperating witness.

ARGUMENT

Kendrick Tate seeks a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in Section 3553(a)(2). 18 U.S.C. § 3553(a).  He asserts that the agreed upon sentence of 159 months plus the mandatory supervisory release period of six years will achieve those purposes.[1]

"A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." United States v. Carvajal, Unreported, and 2005 WL 476125 (S.D.N.Y. 2005). Any sentence imposed must meet three criteria, at least. Those are: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.[2]

A. *Need for the sentence imposed.*

A sentence of 159 months is a substantial portion of anyone's life, a length of time that will not only promote respect for the law but will severely punish Kendrick Tate by taking away all opportunities to be in society for the next several years, including time with his family. In particular, his grandmother, Thomasine, has recently battled cancer,

---

[1]  The parties agree that Kendrick Tate's Criminal History Category is III. His total offense level is 31. The guideline imprisonment range is 188-235 months.

[2] See 18 U.S.C. § 3553(a)(2)(A).

and he regrets that he will not be there to support her and his mother during the near future.

In response to the Government's Proposed Conditions of Supervised Release, Kendrick Tate has a supportive family and expects they will continue to support him through his period of incarceration and afterward, including with housing. Moreover, the length of his sentence will have separated him from his peers for more than a decade, making a curfew to discourage such associations unnecessary. He welcomes and appreciates all efforts to provide mental health treatment, and looks forward to participating in occupational programming.

B. *Adequate deterrence to criminal conduct*[3]

Prior to this sentence and the related state case in Essex Superior Court, Kendrick Tate had never before been sentenced to state prison. While he acknowledges he has previously been sentenced to shorter county sentences, his current term of incarceration will represent the first time Kendrick has had to pay such a significant penalty for his unlawful conduct. Consistent with research in the area, the certainty of a significant punishment has a definite and particularized deterrent effect.[4]

C. *Protection of the public*

A sentence of 159 months in prison will not only protect the public during that period of incarceration, but it is also sufficient to protect the public upon Kendrick Tate's release. While incarcerated, he will have many opportunities to improve himself through

---

[3] See 18 U.S.C. § 3553(a)(2)(B).

[4] See Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28-29 (2006).

pycho-educational courses, classes directed at obtaining his GED and occupational training, and counseling. Probation recommends that Kendrick engage in the intensive Residential Drug Abuse program, providing him with nine months of residential treatment prior to his release, in addition to continued support services once in the community. Similarly, probationary services subsequent to Kendrick's release, including mental health counseling and job training, will provide support and oversight to ensure his success and compliance with the law.

Finally, Kendrick will be nearing his forties by the time he completes his sentence, an age that is linked with reduced recidivism. As stated by researchers Kyung Yon Jhi and Hee-Jong Jo, "The inverse relationship between age and involvement in crime has been one of the oldest and most widely accepted phenomena in criminology."[5] For example, two recent studies conducted by the Sentencing Commission show that recidivism rates decline consistently as age increases, from 35.5% under age 21, to 9.5% over age 50.[6] Similarly, a Texas study found current age to have the strongest relationship of any factor with parole success.[7] Also, the Parole Commission's Salient Factor Score (SFS), proven to be a better predictor of recidivism than the Criminal History Category,

_____

[5] Predictors of Recidivism Across Major Age Groups of Parolees in Texas, Kyung Yon Jhi a8nd Hee-Jong Jo, Justice Policy Journal (Spring 2009) at 7 (internal citations omitted.); Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, http://www.ussc.gov/publicat/ Recidivism_General.pdf (2004) at 12, 28.

[6] Comparison of the Federal Sentencing Guidelines Criminal History Category and the Ux.S. Parole Commission Salient Factor Score, http://www.ussc.gov/publicat/ RecidivismSalientFactorCom.pdf.

[7] Kyung Yon Jhi and Hee-Jong Jo at 8.

found the older the defendant is, the less likely his is to recidivate.[8] As such, the SFS

provides for an automatic reduction in the sentence for anyone over the age of 41. And

while the Sentencing Commission has yet to incorporate age as a salient factor in

sentencing, it notes that, "Offender age is a pertinent characteristic [that would] improve

[the] predictive power of the guidelines if incorporated into the criminal history

computation".[9]

CONCLUSION

For all these reasons, Kendrick Tate requests that the Court adopt the agreed upon

disposition, with a recommendation for RDAP, a sentence which is "sufficient but not

greater than necessary" to achieve the purposes set forth in 18 U.S.C. § 3553(a). United

States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738

(2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v.Rodriguez,

527 F.3d 221 (1st Cir. 2008). Moreover, the sentence will still provide him with the

opportunity to change the course of his life in order to be a productive member of society

and his own family.

---

[8] U.S. Parole Commission Salient Factor Score (Release 3) at 8, 13-15. Measuring
Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,
United States Sentencing Commission (May 2004) at 16.

[9] U.S.S.G. §5H1.1, p.s.

Respectfully Submitted,

KENDRICK TATE

By his attorney,
/s/ Victoria Kelleher
Victoria Kelleher
BBO #637908
One Marina Park Drive
Boston MA 02210
978-744-4126

CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, January 29, 2019 via electronic filing with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

/s/ Victoria Kelleher
Victoria Kelleher